### In re HARTER'S ESTATE.

#### (Surrogate's Court, Tompkins County. June 14, 1914.)

1. WITNESSES (§ 159*)—COMPETENCY—DECEASED PERSONS.

Under Code Civ. Proc. § 829, the survivor cannot, in a proceeding to charge the estate of the deceased party to a contract, testify as to the same.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 629, 664, 666–669, 671–682; Dec. Dig. § 159.*]

2. EXECUTORS AND ADMINISTRATORS (§ 221*)—IMPLIED CONTRACTS—CARE OF DECEDENT.

Where ordinarily services performed by one member of the family for another are presumed to be gratuitous, there is no such presumption, where a daughter, after marriage, furnished her aged father, who was not dependent, with board and lodging, for the daughter by her marriage originated a new family group, and changed the relation between herself and her father.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 901–903½, 1858, 1861–1863, 1865, 1866, 1871–1874, 1876; Dec. Dig. § 221.*]

In the matter of the judicial settlement of the estate of William H. Harter, deceased. Contested accounting upon the claim of Alvira H. Ellis. Claim allowed.

Geo. E. Goodrich, of Dryden, for claimant.
C. V. Coon, of Cortland, for contestants.

SWEETLAND, S. This is a contested accounting, narrowed down to a single question, which is, the validity of the claim of a daughter, Alvira H. Ellis, for board, care, and lodging furnished by her for her father, William H. Harter, during the last 15 months of his life. He was about 80 years of age at the time of his death, a widower, having six children, all of full age, and having homes and residences of their own. His property, at the time of his death, consisted chiefly of incumbered real estate, which has since been sold, realizing more than

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

enough to pay his debts, including this claim, at the moderate price charged.

[1] It is the claim of the heirs, other than Mrs. Ellis, that the services rendered by her are presumed to be gratuitous, and that she ought not to recover because the services were rendered by a daughter to a father. Mrs. Ellis is incompetent to testify as to the arrangements made by her, with her father, when he came to reside at her home, because of the wise provisions of section 829 of the Code of Civil Procedure. This section may, in some instances, defeat the establishment of honest claims, but it is especially helpful in preventing the establishment of fraudulent and manufactured claims against estates, and its usefulness is recognized.

[2] The old gentleman, for many years prior to coming to reside with Mrs. Ellis, had lived in his own house, and continued there to live until after the death of his wife, the claimant's mother. He lived alone for a time, then moved about from child to child, and finally settled with Mrs. Ellis, taking with him the remnants of his household furniture, the bulk of which he had previously sold. Mr. Ellis, the claimant's husband, said to her, as she had taken care of his mother, she, and not he, should have the pay for caring for her father. It is established that the old gentleman was kindly and comfortably cared for by Mr. Ellis, and if this claim be allowed, there will be a substantial sum for distribution.

It is a familiar proposition of law that, in the absence of an expressed contract between members of the same family, one cannot collect from the other or from the other's estate for board or services rendered. This rule, like most rules of law, is not of universal application, and has its exceptions. The failure to clearly distinguish the cases wherein the above principle applies, and where it does not apply, has in many instances wrought injustice to worthy and deserving claimants. The facts in this case are such that the court ought not to be astute to find a way to defeat the claimant's claim, but rather to point the way, within the law, to do justice, and to aid in establishing and strengthening the confidence that the law is wise and just.

When Mrs. Ellis, the claimant, lived at the home of her father, in his house, as she did until the time of her marriage, they constituted one family, of which he was the head; but that intimate family relation changed when she married, left her father's house, changed her home and residence, and went to the home and house of her husband. Then was organized another family group; there were two separate families instead of one. When William H. Harter thereafter came into the family and residence of Mr. Ellis, the husband of the claimant, the conditions were so different that the principle of gratuitous services did not and does not apply. The services rendered by Mrs. Ellis were rendered under such circumstances and conditions that no presumption arises that they were intended to be gratuitous, or were of such a nature as not to entitle her to recover their reasonable value.

The claimant established that the deceased several times said to her in the presence of others, "If you don't get your pay for all this trouble

and care, you will be to blame," referring to the services rendered for him by the claimant. He paid her money, and told her to keep track of it; that if she needed more money, to tell him, and he would have his rent paid in advance so that she might have it. Such conduct is entirely inconsistent with the theory that he did not intend to pay his daughter for her services.

I believe that there is nothing in the case to justify the presumption that it was the intention of either party that the services should be gratuitous, and that not only is there proof of a promise to pay, but from the situation and the condition of the parties that promise should be inferred. The rule is well stated in 21 Am. & Eng. Ency. of Law (2d Ed.) p. 1066:

"A child living separate and apart from a parent, who is himself in comfortable circumstances, is under no obligation to perform services for him without payment, and consequently the presumption against payment does not obtain." "When a child has become of age, left home, * * * the general rule that a promise to pay for services rendered is inferred applies."

In the case of Markey v. Brewster, 10 Hun, 16, affirmed in 70 N. Y. 607, wherein a daughter went to the home of her mother to care for her, it was held that the presumption that services were gratuitous between near relatives did not apply in such cases. In Wilsey v. Franklin, 57 Hun, 383, 10 N. Y. Supp. 833, there was no proof of a promise or agreement to pay, but the court held a promise to pay for services rendered by a daughter who left home to care for her aged mother would be inferred without any proof of an agreement as to compensation. An excellent discussion of the law governing this case is contained in Matter of Lannon, 75 Misc. Rep. 66, 134 N. Y. Supp. 974.

It seems to me that the right to recover by the claimant was sufficiently established in this case. The value of the services rendered by the claimant is not disputed. Findings and a decree may be presented accordingly.