the rights of the lessor, and he could thereafter enforce his claim against the defendant in the same way and to the same extent that the lessor could had such payments not been made. This right the plaintiff had, not by reason of any contract relation with the defendant, but because of the fact that it was necessary for him to make good the default of the defendant, in order that his own property rights might be preserved.

The judgment, therefore, must be affirmed, with costs. All concur.

(70 App. Div. 73.)

## In re HAMILTON.

(Supreme Court, Appellate Division, First Department. March 7, 1902.)

CLAIM AGAINST DECEDENT'S ESTATE—EVIDENCE—SUFFICIENCY.

Evidence to support the claim of a wife against the estate of her deceased husband showed that he had boarded with her before their marriage, and that she thereafter supported him in her house until he died; that he had said that he owed her for all the property which he had, and that he had told his attorney so, and at his suggestion executed a statement of his liabilities while involved in business trouble, showing an indebtedness to her for board equal to the amount claimed, which he delivered to his attorney to give it to his wife, or keep it for her. *Held,* that the evidence was sufficient to support the claim.

Appeal from surrogate's court, New York county.

Judicial settlement of the accounts of Ann Hamilton, as administratrix of William Hamilton, deceased. From the decree of the surrogate settling her account (70 N. Y. Supp. 426) she appeals in so far as it modified the report of the referee therein by disallowing a claim which she had presented individually against the estate. Reversed, and the report of the referee confirmed.

Ann Hamilton was the widow and administratrix of William Hamilton. She filed her account as administratrix, at which time she also presented claims individually against her husband's estate. The matter was duly referred, and the referee found in favor of the claimant. When the matter came before the surrogate, he disallowed a portion of the said claim, amounting to $25,000. William Hamilton, a Scotchman, came to this country in the early 70's with his friend Donald Mitchell. They both boarded with Mrs. Gardiner at her boarding house on East Twenty-Fifth street, in New York City. In 1876 Hamilton married Mrs. Gardiner. At that time he was a journeyman carpenter, but after his marriage became a boss carpenter and builder. At the time Mrs. Hamilton first became acquainted with Mr. Hamilton she was keeping a boarding house, and had from 20 to 25 boarders. When she married Mr. Hamilton she removed from Twenty-Fifth street to Thirty-First street, where she still resides. She purchased the house, and continued to take boarders, and always had either boarders or lodgers from that time until the present. She received the money from her boarders, purchased her own supplies, and ran the house in the same manner that she had conducted the same prior to her marriage. Hamilton contributed nothing toward the support of the household, but used all the money he earned in his business. He told his friend Mitchell that all the property he had he owed to Mrs. Hamilton, because she had supported the household, and allowed him to use his money in his business, and had at times loaned him money, and had furnished the money for him to start in business. There was a time when he came to Mitchell, who had always been his adviser, and told him he was afraid that he would get into some financial difficulty, and he wished to do something that would insure the protection of Mrs. Hamil-

ton's rights, inasmuch as he was owing her for all the property which he had. He also told the same story to his friend and attorney Mr. Finck, and told Finck that he wished to do something to protect Mrs. Hamilton's rights. Finck told him to make a statement of his affairs,—what property he had, and what he was owing,—and bring it to him. Hamilton made a written statement of the property he possessed, and in connection therewith appeared the following:

"I ouw Mrs. Hamilton for Home Keap for 17 years at $1500 Per year.

"The amount of time I have Bean in Bussines which amounts to...$25,500.00

"Wm. Hamilton,

"210 East 26 St."

The written statement he delivered to Finck, and told him to give the same to Mrs. Hamilton, or keep it for her. Finck delivered the paper to Mrs. Hamilton after her husband's death. Motion was made to confirm the report of the referee. The surrogate denied the same as to the claim for board, and from such determination this appeal is taken.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGH-LIN, O'BRIEN, and INGRAHAM, JJ.

George Finck, for appellant.

Arthur C. Rounds, for respondent.

HATCH, J. The referee found upon substantially undisputed testimony that the claimant furnished the board and house for the deceased during the period for which she makes claim. The obligation thus assumed by the claimant was a duty which was imposed upon the husband. The primary obligation rested upon him not only to support himself, but to support his family. Her assumption of an obligation not resting upon her, but which was imposed upon him, could not create a presumption that the food and lodging so furnished were intended to be gratuitous. It is a general rule that, where the relation of the parties is of such a character as repels the presumption of a promise to pay for service rendered, it will be presumed that the service was intended to be gratuitous. The rule is well stated in Ross v. Hardin, 79 N. Y. 84; Lind v. Sullestadt, 21 Hun, 364. But where the relation is such as casts upon the husband the duty of maintenance and support of his wife and family, no such presumption obtains. Undoubtedly, if the wife chooses to assume the burden, and does in fact apply her income to the maintenance of the family, intending that the same shall be gratuitous, no recovery can be had for the amount so expended. But where it appears that the husband recognized the obligation to support himself, and not be supported by her, there is no presumption that the wife intended the application of her income as a gratuity to him. Hendricks v. Isaacs, 117 N. Y. 411, 22 N. E. 1029, 6 L. R. A. 559, 15 Am. St. Rep. 524. Under such circumstances, where the husband has been supported by the wife, any competent proof tending to show that the husband recognized an obligation upon his part to reimburse the wife for her outlay will be supported and upheld as sufficient to create a valid indebtedness against his estate. In the present case it is practically undisputed that the board furnished was continuous, and covered the period claimed in the account presented by the claimant. The paper introduced in evidence is a declaration upon the part of the husband not only that he received the board and paid nothing therefor, but that he was also

indebted for the same. Consequently, every element of a good cause of action in favor of the claimant was established at the trial, and the wife became entitled to recover therefor. Gallagher v. Brewster, 153 N. Y. 364, 47 N. E. 450. The admission in that case, which was held sufficient upon which to found an obligation against the estate, when connected with proof of the rendition of service, is no stronger in form than is the present declaration made by the husband, while the proof to show the rendition of the service is very much stronger than appeared in that case. Therein the proof of service was slight, and nearly inclusive; here it is strong and undisputed. It furnishes, therefore, a controlling authority of the right of the plaintiff to recover.

It is suggested that no proof of the value of the board and lodging was given, and therefore that the admission of an indebtedness in the amount of $25,000 was excessive. It is sufficient to say that no point whatever was raised before the referee in respect of such matter, the whole claim of the respondent being based upon the thory that no recovery could be had of any sum, conceding all that appeared. But it is clear that the proof was sufficient upon which to found a claim, and the admission of the husband was of an existing indebtedness, and sufficient upon which to found the promise to pay.

It follows that the decree of the surrogate disallowing this claim should be reversed, and the report of the referee be in all respects confirmed, with costs to the appellant. All concur.