In the Matter of the Accounting of PAUL H. KENNEDY, as Administrator of the Estate of JEAN TAYLOR, Deceased.

Surrogate's Court, Broome County, July 14, 1954.

*James B. Gitlitz* and *Charles D. Keane* for administrator, petitioner.

*Willard E. Pierce, Jr.,* and *William E. Night* for Detroit Trust Company, as executor of Don F. Kennedy, deceased, and another, respondents.

*Ray T. Hackett* and *John Harbachuk* for Mary K. Kennedy, respondent.

*Charles R. Stewart* for Marguerite J. Buckmaster, respondent.

PAGE, S. The judicial settlement of the administrator's account in this case requires the determination of a claim by his wife, Mary K. Kennedy, for personal service allegedly rendered to the deceased during the last six years of the lifetime of the latter. Concededly, there was no regular rate of payment ever agreed to between the claimant and said deceased. Therefore, we are concerned with arriving at a conclusion as to the compensable, reasonable value, if any, of said services. As such

reasonable value, the amount claimed is at the rate of $35 a week for 312 weeks, amounting to $10,920.

The services in question consisted of a great variety of ministrations in accordance with personal needs of Mrs. Taylor during the period for which the claim is made. They included supervision of the management of the home owned and occupied by her, her business with banks and stores, etc., payment of her personal and household bills; also, arranging for her medical and nursing care during times when she needed someone to look after her in that regard, taking her out for automobile trips, reading to her and other more or less essential personal attentions which she required particularly because she was blind, or nearly so. From all the evidence it appears that there is no reasonable question but that the services were valuable, if not indispensable, to Mrs. Taylor and that the claimant, throughout all of the last six years of Mrs. Taylor's lifetime and for several years before then, was engaged an average of approximately two hours per day in her attention to Mrs. Taylor and her affairs.

The services here in question rendered by the claimant, at least prima facie, constitute a basis for an award of the reasonable value thereof. They do so conclusively, provided there is no contravening circumstance of such weight and cogency as to decisively militate against the claimant's position in this matter. One of such possible circumstances is the fact that the claimant is the wife of one of the nephews of the deceased, her niece-in-law, if such a term is recognizable. In my view, this is not a sufficiently near approach to cases in which a close degree of kinship, a relationship such as there ordinarily is between members of the same immediate family, existed. Another circumstance is the fact that it does not appear that during decedent's lifetime the claimant either ever demanded or received any compensation from the decedent, this negative fact being suggested as some indication that the present claim was an "afterthought". Under the conditions surrounding the rendition of the services here in question, this fact does not, to the extent of defeating the claim, support the inference that there was no mutual intent existing between Mrs. Taylor and the claimant that the latter was to be compensated for her services. I think this consideration is offset by an inference well supported by the evidence to the effect that the claimant was, at all times, kind and considerate in her rendition of services to Mrs. Taylor and the latter had a very limited income applicable to her support and maintenance.

Testimony of the administrator, Paul H. Kennedy, husband of the claimant, was to the effect that the services rendered by claimant were pursuant to a request of her for the same by Mrs. Taylor. Implied in this request there would be a promise to pay the reasonable value of such services. The subsequent rendition of the services would result in a unilateral contract based upon an offer, and acceptance by complying with such offer. (See *Matter of Klausner*, 192 Misc. 790, 799.)

But this would not be the only theory upon which the claim here must necessarily be supported. Another would be that the rendition of services, presumptively, gives rise to an obligation on the part of the person to whom the services were rendered to pay the reasonable value thereof. (*Matter of Mason*, 134 Misc. 902, 904; *Matter of Hughes*, 229 App. Div. 614, 615, both citing and following the old leading case of *Moore* v. *Moore*, 3 Abb. Ct. App. 303.) Under this theory the recovery is limited to a *quantum meruit*, that is, as much as the claimant deserves under the individual circumstances of such a case.

A prominent characteristic of the concept of *quantum meruit* is as a device for the prevention of unjust enrichment of one party at the expense of another. This concept is applicable in the present case, for the effect of dismissing the present claim would be only to augment the '' windfall '' to nephews and the estate of a deceased nephew of this decedent.

The claimant adduced evidence designed to support the inference that the fair and reasonable value of services similar to those which she rendered to the deceased was of the reasonable value of $35 per week. Her witnesses on this question referred to situations essentially different than that in which the claimant rendered the services here in question. But I think we must recognize that it would be quite impossible to duplicate the exact situation presented in the present case.

It is contended by respondents that, without clear evidence as to reasonable value, that is, a precise demonstration of what, during the time when claimant's services were rendered, was the going rate of compensation for identical services in the same community, that the claim must fail. To sustain this view would be to say that whatever small degree of intelligence and common sense is possessed by a court must not be resorted to or applied in determining such an issue. In *Matter of Mason (supra)*, the court was dealing with a similar situation, one in which there was evidence that there had been an offer and acceptance constituting a contract (as opposed to a quasi contract) where Judge WINGATE, in Kings County, stated (p. 906): '' It must,

therefore, follow in cases like that here presented, where the making of a special contract to pay the reasonable value of the services is alleged, that the fact of whether or not such contract was actually made is substantially immaterial. If made, it would amount merely to a formal recognition by the parties of what the law presumes. If not made, the legal effect of the acts done would nevertheless be recognized, and in either event only such recovery could be had as was commensurate with the value given and received. (*Robinson* v. *Raynor*, 28 N. Y. 494, 496; *Sturtevant* v. *Fiss, Doerr & Carroll Horse Co.*, 173 App Div. 113, 115; *Leahy* v. *Campbell*, 70 id. 127, 130; *Chambers* v. *Sterling Automobile Mfg. Co.*, 163 N. Y. Supp. 574, 576.) (See, also, *McKeon* v. *Van Slyck*, 223 N. Y. 392, 399.)''

In the present case the composite consideration of all the evidence is to the effect that the fair and reasonable value of the services here in question would be at an average rate of $15 per week, amounting to a total of $4,680. I so find, and, therefore, allow the claim to this extent.

At the hearing in this case, counsel for respondents raised a question as to the competency of Paul H. Kennedy, husband of the claimant, to testify on her behalf. His testimony having been received over such objection, a motion was made to strike it out because of the provisions of section 347 of the Civil Practice Act. This objection is overruled and motion to strike such testimony denied. The claimant's husband did not have such a direct financial interest in the disposition of this claim as would bring him within the provisions of this section. See *Matter of Manchester* (279 App. Div. 254), which considered but refused to follow the case relied upon by respondents, viz., *Scheu* v. *Blum* (136 App. Div. 592). Also, see section 60 of the Domestic Relations Law. Moreover, as one of the distributees of the estate, he was testifying against, not in support of his own personal financial interest. The fact that the claimant may have held real and personal property jointly with her husband is immaterial. She was no less free to make such a disposition of her earnings than she would be to dispose of them in any other manner without constituting **her husband as a** party directly financially interested in any issue there might be as to her recovery of such earnings.

A related claim presented in this proceeding is based upon the assertion by the claimant that she was the donee of a gift from the deceased consisting of certain household furniture and furnishings, the appraised valuation of which was the sum of $512.50. As to this claim of a gift, the evidence is insufficient

to support the claimant's burden of proof.  The evidence as to the elements of intention and delivery is inadequate.  This claim is, therefore, dismissed.

By agreement or upon notice, settle decree in accordance with the foregoing decision.